IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| MARSHA KELLY<br>3434 Washington Blvd.<br>Cleveland Heights, OH 44118,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID BROOKS<br>5244 Mauna Loa Lane,<br>Orlando, FL 32812-0000<br><br>and<br><br>UNIVERSITY HOSPITALS HEALTH SYSTEMS, INC. dba UNIVERSITY HOSPITALS<br>   c/o Its Statutory Agent<br>   Janet Miller<br>   3605 Warrensville Center Road<br>   MSC 9110<br>   Shaker Heights, OH 44122,<br><br>and<br><br>UNIVERSITY HOSPITALS MEDICAL GROUP, INC.<br>   c/o Its Statutory Agent<br>   Janet Miller<br>   3605 Warrensville Center Road<br>   MSC 9110<br>   Shaker Heights, OH 44122,<br><br>and<br><br>JOHN DOES I THROUGH V, INCLUSIVE,<br><br>Defendants. | CASE NO.:    Complaint<br>                      BRIAN J CORRIGAN<br>                      CV 13 802631<br>JUDGE:<br><br>**COMPLAINT**<br><br>**Plaintiff demands a trial by jury on all issues triable of right by a jury, pursuant to Ohio R. Civ. P. 38.** |

## INTRODUCTION

1. Plaintiff Marsha Kelly ("Kelly" or "Plaintiff") brings this suit for damages caused by the discriminatory, retaliatory, and otherwise unlawful conduct of Defendants David Brooks

("Brooks"), University Hospitals Health Systems, Inc., dba University Hospitals ("UHHS"), University Hospitals Medical Group, Inc., ("UHMG"), and John Does I though V ("DOES I - V") (collectively, "Defendants").

2. Kelly is a citizen of the United States and resides in Cuyahoga County, Ohio.

3. Kelly is a "person" and "employee" within the meaning of Ohio Rev. Code § 4112.

4. At all relevant times hereto, Brooks was a resident of Ohio.

5. Brooks is a "person," an "individual" and an "employer" within the meaning of Ohio Rev. Code § 4112.

6. UHHS is a corporation for non-profit registered and doing business in in Cuyahoga County, Ohio.

7. UHHS is a "person," an "individual" and an "employer" within the meaning of Ohio Rev. Code § 4112.

8. UHMG is a corporation for non-profit registered and doing business in Cuyahoga County, Ohio.

9. UHMG is a "person," an "individual" and an "employer" within the meaning of Ohio Rev. Code § 4112.

10. Kelly does not know the true names and capacities of defendants sued as Does I through V. She will amend the complaint to show the true names of each such defendant when their identities have been ascertained. Each of the Doe defendants encouraged, participated in, and/or ratified and approved the wrongful and unlawful conduct described below. Each of the Doe defendants was at all relevant times, the agent, employee or representative of one or more of the named defendants and/or the other Doe defendants, and was acting within the course and scope of such relationship.

2

11. Upon information and belief, each of DOES I - V is a "person," an "individual" and an "employer" within the meaning of Ohio Rev. Code § 4112.

12. This Complaint is the re-filing of *Marsha Kelly v. David Brooks et al.*, Cuyahoga County Case No. CV-11-765887, which was removed by Defendants to federal court, dismissed voluntarily by that Court on March 7, 2012, and is now timely re-filed.

13. The Court has jurisdiction over Plaintiff's claims against Defendants pursuant to Ohio Revised Code § 2305.01, Ohio Revised Code § 4112.02(A), Ohio Revised Code § 4112.02(I), 29 U.S.C. § 2617, Ohio Revised Code § 4112.02(J), and Ohio Revised Code § 4112.99. The conduct giving rise to the claims described below occurred in Cuyahoga County, Ohio. Jurisdiction and venue are proper.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

14. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

15. Kelly was employed by Defendants until October 6, 2010, at which time she was informed that she was being terminated from her employment.

16. At all times relevant hereto, Brooks was employed with UHHS and UHMG in a supervisory capacity over Kelly. His actions concerning Kelly's employment were the actions of UHHS and UHMG.

17. Brooks has plead guilty to and was convicted of 15 felonies arising out of the course of his employment, including aggravated theft, grand theft, forgery, and money laundering. *See Ohio v. David Brooks*, Cuyahoga County Case No. CR-12-561839.

18. While employed as Kelly's supervisor, Brooks violated numerous Ohio laws and workplace policies, including, *inter alia*: engaging in aggravated theft, grand theft, fraud, and money laundering; conspiring with male employees in furtherance of his unlawful activities; entering inappropriate sexual relationships with male employees; unfairly

3

favoring male employees in hiring, pay and employment opportunities; carrying out vendettas; unfairly disciplining employees; and causing false accusations to be filed against female employees and employees who engaged in protected activities, including employees who took leaves of absence.

19. Brooks and the other Defendants discriminated and retaliated against Kelly, including by: subjecting Kelly to verbal, mental, emotional and physical harassment and abuse; treating her less favorably in the terms and conditions of her employment than male employees; subjecting her to heightened standards of performance and increased scrutiny as compared to men; sabotaging her work; discriminating against her with respect to pay; publishing false and exaggerated allegations of policy violations and/or misconduct against her; subjecting her to unwarranted discipline or disproportionately harsh discipline as compared to male employees; suspending and terminating her in violation of her statutory rights; and refusing to retain, transfer, or hire Kelly into open positions for which she was qualified.

20. UHHS and UHMG aided, participated in, ratified and acquiesced in the above discrimination and retaliation against Kelly.

21. Defendants knew or should have known of Brooks' ongoing sexual favoritism and unlawful and retaliatory conduct because Brooks was a supervisor, because they participated in, ratified and acquiesced in the acts, and because Kelly and others complained to Defendants about his conduct.

22. Defendants were aware that Kelly had complained about Brooks's conduct and otherwise engaged in protected activity, including seeking leave to treat a serious health condition.

23. Defendants stated that Kelly's complaints and protected activity were factors in her termination.

4

24. Kelly was not terminated for any reasons related to her actual performance or non-compliance with company policy or procedure.

25. At all times relevant hereto, Kelly was qualified for the position(s) in which she was employed, and for other open positions with Defendants.

26. Nonetheless, Defendants terminated Kelly's employment and refused to retain, transfer, reinstate or rehire her.

## COUNT ONE

27. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

28. Kelly is a woman.

29. Defendants discriminated against Kelly on the basis of her gender, including by: subjecting Kelly to verbal, mental, emotional and physical harassment and abuse; treating her less favorably in the terms and conditions of her employment than male employees; subjecting her to heightened standards of performance and increased scrutiny as compared to men; sabotaging her work; subjecting her to discriminatory compensation and pay; registering false or exaggerated allegations of policy violations and/or misconduct against her; subjecting her to unwarranted discipline or disproportionately harsh discipline as compared to male employees; suspending and terminating her in violation of her statutory rights; replacing her with a man; refusing to retain, transfer, promote, or hire Kelly into open positions; and otherwise discriminating against her with respect to the terms and conditions of employment.

30. As a direct and proximate result of Defendants' conduct, Kelly suffered and will continue to suffer non-economic and economic injuries, including but not limited to pain and suffering and the loss of salary, benefits, and other privileges and conditions of employment, for which Defendants are liable.

31. Defendants' conduct was willful, reckless and malicious. Defendants are liable to Kelly for past and future economic and non-economic compensatory damages, punitive damages, back pay, front pay, reinstatement with seniority rights and fringe benefits, attorney's fees and costs, witness fees, expert fees, interest, and any additional legal or equitable relief that this Court deems appropriate.

## COUNT TWO

32. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

33. During the course of her employment, Kelly suffered from serious health conditions which required continuing treatment and leaves of absence, including ankle and mobility problems requiring surgery, and heart problems requiring hospital stay.

34. Kelly notified Defendants of her serious health conditions and need for medical leave as was practical under the circumstances.

35. Defendants were aware of Kelly's serious health conditions, that she had a record of such conditions and needed leaves of absence to treat her conditions.

36. Defendants claimed that Kelly was terminated because she demonstrated a pattern of needing leave to treat her conditions.

37. Defendants interfered with and retaliated against Kelly because she had serious health conditions and sought leaves of absence, including by: subjecting her to verbal, mental, emotional and physical harassment and abuse; treating her less favorably in the terms and conditions of her employment than employees who did not suffer from such conditions and/or require leave; subjecting her to heightened standards of performance and increased scrutiny as compared to employees who did not suffer from such conditions and/or require leave; sabotaging her work; registering false or exaggerated allegations of policy violations and/or misconduct against her; subjecting her to unwarranted discipline or

disproportionately harsh discipline as compared to employees who did not suffer from such impairments and/or require leave; terminating her in violation of her statutory rights; and otherwise discriminating against her with respect to the terms and conditions of employment.

38. Defendants were familiar with the requirements of the Family and Medical Leave Act, its procedures, and Kelly's rights thereunder.

39. As a direct and proximate result of Defendants' unlawful conduct, Kelly has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including but not limited to pain and suffering and the loss of salary, wages, benefits, and other privileges and conditions of employment.

40. Defendants' actions in violation of 29 U.S.C. § 2617 were willful, reckless and malicious. Defendants are liable to Kelly for past and future economic and non-economic compensatory damages, back pay, front pay, reinstatement with seniority rights and fringe benefits, attorney's fees and costs, witness fees, expert fees, liquidated damages, interest, and any additional legal or equitable relief that this Court deems appropriate.

### COUNT THREE

41. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

42. During the course of her employment, Kelly suffered from physical and mental impairments, which limited one or more major life activities, including among others walking, breathing, concentrating and thinking.

43. Defendants were aware of Kelly's impairments, were aware that she had a record of impairments, and regarded her as having an impairment.

44. At all times relevant hereto, Kelly was a qualified individual with a disability.

7

45. Defendants discriminated against Kelly because she had a disability, including by: subjecting her to verbal, mental, emotional and physical harassment and abuse; treating her less favorably in the terms and conditions of her employment than employees who did not have a disability; subjecting her to heightened standards of performance and increased scrutiny as compared to employees who did not have a disability; sabotaging her work; registering false or exaggerated allegations of policy violations and/or misconduct against her; subjecting her to unwarranted discipline or disproportionately harsh discipline as compared to employees who did not have a disability; terminating her in violation of her statutory rights; and otherwise discriminating against her with respect to the terms and conditions of employment.

46. As a direct and proximate result of Defendants' unlawful conduct, Kelly has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including but not limited to pain and suffering and the loss of salary, wages, benefits, and other privileges and conditions of employment.

47. Defendants' actions were willful, reckless and malicious. Defendants are liable to Kelly for past and future economic and non-economic compensatory damages, punitive damages, back pay, front pay, reinstatement with seniority rights and fringe benefits, attorney's fees and costs, witness fees, expert fees, interest, and any additional legal or equitable relief that this Court deems appropriate.

## COUNT FOUR

48. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

49. Defendants aided, abetted, and incited the gender and disability discrimination against Kelly with respect to the terms, conditions, and privileges of employment, as described above, in violation of R.C. § 4112.02(J).

50. As a direct and proximate result of Defendants' conduct, Kelly suffered and will continue to suffer non-economic and economic injuries, including but not limited to pain and suffering and the loss of salary, benefits, and other privileges and conditions of employment, for which Defendants are liable.

51. Defendants' conduct was willful, reckless and malicious. Defendants are liable to Kelly for past and future economic and non-economic compensatory damages, punitive damages, back pay, front pay, reinstatement with seniority rights and fringe benefits, attorney's fees and costs, witness fees, expert fees, interest, and any additional legal or equitable relief that this Court deems appropriate.

## COUNT FIVE

52. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

53. Brooks has a history of dishonesty, of falsifying and forging documents in an effort to conceal his unlawful conduct, of making employment decisions that favored male employees with whom he had sexual or unlawful relations, and of discriminating and retaliating against female employees and employees who engaged in protected activities, including employees who took leaves of absence.

54. In fact, Brooks is a convicted felon, guilty of multiple counts of theft, forgery, and money laundering arising from his employment.

55. Defendants knew or should have known of Brooks's ongoing incompetence and mistreatment of Kelly and employees causing them harm.

56. Defendants knew or should have known that Kelly and numerous employees had been injured by Brooks's incompetence, misfeasance and malfeasance in his interactions with employees, including but not limited to: engaging in theft, fraud, forgery, money laundering; conspiring with male employees to further his crimes; engaging in

inappropriate sexual relationships with male employees; favoring male employees and employees who entered unlawful relationships with him with better job opportunities, pay and assignments; carrying out vendettas; and causing false charges, write-ups and accusations to be filed against employees who were aware of or complained of workplace mistreatment or misconduct.

57. Brooks was employed and retained by UHHS and UHMG despite knowledge of his ongoing incompetence and mistreatment of employees causing them harm.

58. UHHS and UHMG were negligent in hiring, retaining, and/or supervising Brooks. Their negligence caused Kelly harm. Brooks's mistreatment of Kelly which caused her harm was foreseeable in that Brooks falsified records and mistreated her over an extended period, and discriminated against her as described above with respect to the terms and conditions of her employment on the basis of gender, disability, and/or need for leave of absence to treat a serious health condition. UHHS and UHMG were aware of such behavior by Brooks and his propensity to falsify records and treat employees in such fashion, and were negligent in letting it continue and requiring other employees, such as Kelly, to be exposed to such continued mistreatment.

59. Brooks's treatment of Kelly injured her, causing her to lose her employment, be denied retention, transfer, promotion, or hire into open positions, and suffer emotional harm.

60. Brooks's employment was not terminated by the Defendants before Kelly was harmed.

61. As a direct and proximate result of Defendants' negligent and malicious conduct, Kelly suffered and will continue to suffer past and future non-economic and economic injuries, including, but not limited to, pain and suffering and the loss of salary, wages, commissions, bonuses, benefits and other privileges and conditions of employment, for which Defendants are liable.

62. Defendants' actions against Kelly were willful, reckless, and/or malicious and render Defendants liable for past and future economic and non-economic compensatory and punitive damages as well as attorneys' fees, costs and any equitable relief that this Court deems appropriate.

## COUNT SIX

63. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

64. In addition to the conduct described above, Defendants have engaged in other wrongful conduct with malicious purpose, recklessly, wantonly and in bad faith, including subjecting Kelly to verbal, mental, emotional and physical harassment and abuse; treating her less favorably in the terms and conditions of her employment than male employees; subjecting her to heightened standards of performance and increased scrutiny as compared to men; sabotaging her work; discriminating against her with respect to pay; publishing false and exaggerated allegations of policy violations and/or misconduct against her; subjecting her to unwarranted discipline or disproportionately harsh discipline as compared to male employees; suspending and terminating her in violation of her statutory rights; and refusing to retain, transfer, or hire Kelly into open positions for which she was qualified.

65. Defendants either intended to cause Kelly emotional distress, or knew or should have known that their conduct would result in severe emotional distress to Kelly.

66. The conduct of Defendants was so extreme and outrageous that it goes beyond all possible bounds of decency and is utterly intolerable in a civilized community.

67. Defendants' conduct has caused Kelly harm, and no reasonable person could be expected to endure the harm caused by Defendants.

68. Defendants through their agents and employees, know or should have known of the actions of the other Defendants and ratified, participated or acquiesced in the defamatory acts of the other Defendants.

69. Defendants' conduct as described above was done willfully, wantonly, recklessly, maliciously and in bad faith.

70. As the direct and proximate result of the Defendants' wrongful conduct stated above, Kelly has suffered extreme anguish, humiliation and emotional distress, economic and noneconomic past and future damages, reputational and emotional harm and other damages resulting therefrom.

71. Defendants are liable to Kelly for past and future economic and non-economic damages, pain and suffering, punitive damages, reasonable attorneys' fees and costs, and any other legal and equitable relief this Court deems appropriate.

### COUNT SEVEN

72. Kelly incorporates by reference the previous paragraphs as if fully re-alleged herein.

73. On or about 2010, Brooks and Does I - V formed a conspiracy with willful and malicious motives, in bad faith, and in a wanton or reckless manner, to intentionally inflict emotional distress, abuse, injure, discredit, vilify and otherwise defame Kelly, to terminate her employment, and replace her with a man.

74. As part of their conspiracy, Brooks and Does I - V subjected Kelly to verbal, mental, emotional and physical harassment and abuse; treated her less favorably in the terms and conditions of her employment than male employees; subjected her to heightened standards of performance and increased scrutiny as compared to men; sabotaged her work; discriminated against her with respect to pay; published false and exaggerated allegations of policy violations and/or misconduct against her; subjected her to

unwarranted discipline or disproportionately harsh discipline as compared to male employees; suspended and terminated her in violation of her statutory rights; and refused to retain, transfer, or hire Kelly into open positions for which she was qualified, with a goal of (among other improper goals) intentionally inflicting emotional distress upon Kelly and replacing her with an employee who was a man or who would further Brooks's unlawful activities.

75. By reason of such conspiracy, Kelly has been injured and has suffered great pain and mental anguish.

76. UHHS and UHMG, through their agents and employees, knew or should have known of the conspiracy by the other Defendants and ratified, participated, or acquiesced in the conspiracy against Kelly.

77. As the direct and proximate result of Defendants' malicious, reckless, wanton and bad faith conduct, Kelly has suffered and continues to suffer reputational and emotional harm, pain and suffering, including physical and mental suffering, and other past and future economic and noneconomic damages resulting therefrom.

78. Defendants are liable to Kelly for past and future economic and non-economic damages, pain and suffering, punitive damages, reasonable attorneys' fees and costs, and any other legal and equitable relief this Court deems appropriate.

## CONCLUSION

Plaintiff Marsha Kelly seeks an amount in excess of $25,000 to fully, fairly and justly compensate her for her injuries, damages and losses. She respectfully requests that this Court enter judgment in her favor and award her past and future compensatory damages, actual damages, consequential damages, incidental damages, reliance damages, expectation damages, punitive damages, liquidated damages, interest, fees and costs, and any additional legal or equitable relief as justice requires, including compensatory damages for emotional harm and reputational loss.

Respectfully submitted,

CHRISTOPHER P. THORMAN (0056013)
cthorman@thllaw.com

*Attorney for Plaintiff*

THORMAN & HARDIN-LEVINE CO., L.P.A.
3100 Terminal Tower
50 Public Square
Cleveland, Ohio 44113
Phone (216) 621-3500
Fax (216) 621-3422